No. _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

IN RE ROCK SPRINGS DRIVE LLC,
*Petitioner*

From the United States District Court for
the District of Maryland
Civil Action 8:20-cv-01502

**EMERGENCY PETITION FOR WRIT OF MANDAMUS**

Sara E. Kropf
KROPF MOSELEY PLLC
1100 H Street NW, Suite 1220
Washington DC 20005
(202) 627-6900

*Counsel for Rock Springs Drive LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iv

PRELIMINARY STATEMENT ....................................................................... 1

RELIEF SOUGHT ........................................................................................... 4

QUESTIONS PRESENTED ............................................................................. 4

STATEMENT OF FACTS ................................................................................ 5

  I.    Factual Background ............................................................................. 5

  II.   Procedural History ............................................................................. 6

    A. This Court Issued Two Writs of Mandamus Reversing the District Court's Orders Invading IWA's Privilege and Ordered that Landlord Cannot Use IWA's Privileged Material at Trial................................................................6

    B. RSD's Motion to Quash Barron Subpoena ...................................... 7

    C. Deposition of RSD's Corporate Representative on Pre-Litigation Letters ....... 8

    D. Landlord's Deposition of Mr. Barron................................................ 9

    E. Landlord Did Not Challenge RSD's Assertion of Privilege Until the Pretrial Conference ...............................................................................11

ARGUMENT ................................................................................................ 17

    I.   Standard of Review.............................................................................. 17

    II.   RSD's Right to Mandamus Is Clear and Indisputable .............................. 18

    A. RSD's Communications with its Attorney Are Protected by the Attorney-Client Privilege and Not Admissible in Evidence................................18

    B. RSD Did Not Waive Privilege by Having Mr. Barron Respond to Landlord's Pre-Litigation Letters............................................................. 20

    C. It Is Reversible Error to Allow Landlord to Invite the Jury to Draw an Adverse Inference from RSD's Invocation of Privilege ............................. 21

ii

III.    The District Court's Erroneous Ruling Will have a Destabilizing Effect and a Widespread Impact on an Important Area of Law .................................. 26

IV.     The Case Should be Reassigned on Remand ............................................. 27

   A. The District Court has Already Demonstrated an Unwillingness to Acknowledge Error ...................................................................................... 28

   B. Reassignment Is Advisable to Preserve the Appearance of Justice .......... 29

   C. Reassignment Will Not Result in an Unreasonable Duplication ............... 30

CERTIFICATE OF COMPLIANCE ......................................................................... 31

CERTIFICATE OF SERVICE .................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beraha v. Baxter Healthcare Corp.*,
    1994 WL 494654 (N.D. Il. Sept. 6, 1994)..........................................................23

*Broyles v. Cantor Fitzgerald & Co.*,
    2016 WL 7656028 (M.D. La. Sept. 8, 2016) ..............................................23, 26

*Carter v. State*,
    149 Md. App. 509 (2003)..........................................................................19

*Chase Manhattan Bank v. Turner & Newall, PLC*,
    964 F.2d 159 (2d Cir. 1992) ....................................................................18

*Datapoint Corp. v. Picturetel Corp.*,
    215 F.3d 1344, 1999 WL 507141 (Fed. Cir. July 15, 1999) ..............................23

*Eshelman v. Puma Biotechnology, Inc.*,
    2 F.4th 276 (4th Cir. 2021)......................................................................19

*In re Fluor Intercontinental, Inc.*,
    803 F. App'x 697 (4th Cir. 2020) ...............................................3, 17, 18, 21

*In re Grand Jury Subp.*,
    341 F.3d 331 (4th Cir. 2003) ......................................................................3

*Hagez v. State*,
    110 Md. App. 194 (Md. Ct. Spec. App. 1996)..............................................26

*Haley v. State*,
    398 Md. 106 (2007)................................................................................19

*Hanson v. United States Agency for Int'l Dev.*,
    372 F.3d 286 (4th Cir. 2004) ...................................................................18

*Harrison v. State*,
    276 Md. 122 (1975)...............................................................................19

*Huester v. Clements*,
    252 Md. 641 (1969)...............................................................................19

*In re Itron, Inc.*,
 883 F.3d 553 (5th Cir. 2018)................................................................18

*In re Kellogg Brown & Root, Inc.*,
 756 F.3d 754 (D.C. Cir. 2014) ......................................................18, 27

*In re Lott*,
 434 F.3d 446 (6th Cir. 2005) ..............................................................18

*Mohawk Indus., Inv. v. Carpenter*,
 558 U.S. 100 (2009) ............................................................................17

*In re Murphy-Brown, LLC*,
 907 F.3d 788 (4th Cir. 2018) ..............................................................17

*Newman v. State*,
 384 Md. 285 (2004)..............................................................................19

*Parker v. Prudential Ins. Co. of Am.*,
 900 F.2d 772 (4th Cir. 1990) (per curiam)...................22, 23, 24, 25

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
 232 F.3d 1258 (9th Cir. 2000)............................................................23

*Sharer v. Tandberg*,
 2007 WL 983849 (E.D. Va. Mar. 27, 2007) ................................22, 25

*Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*,
 885 F.3d 271 (4th Cir. 2018)..............................................................20

*Smith v. State*,
 394 Md. 184 (2006)..............................................................................19

*Tillinghast v. Lamp*,
 168 Md. 34 (1935)................................................................................19

*In re Tudor Assocs., Ltd., II*,
 20 F.3d 115 (4th Cir. 1994).............................................................3, 22

*United States v. McCall*,
 934 F.3d 380 (4th Cir. 2019)...............................................28, 29, 30

*United States v. Morris*,
 988 F.2d 1335 (4th Cir. 1993)......................................................26

*United States v. O'Malley*,
 786 F.2d 786 (7th Cir. 1986)......................................................21

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) .........................................................18, 26

*In re Zetia (Ezetimibe) Antitrust Litig.*,
 2023 WL 4156858 (E.D. Va. Apr. 5, 2023).................................22

## Other Authorities

16 Charles Allen Wright, et. al., Fed. Practice & Proc. § 3935.3............18

Fed. R. Evid. 502......................................................................20

## **PRELIMINARY STATEMENT**

This is an emergency petition because trial is scheduled for August 26, 2014, and the district court has erred in holding that a defendant's attorney-client privilege has been waived.

Two different contracts gave Defendant Investors Warranty of America ("IWA") the "absolute right" to assign its ground lease to "any third party." Knowing it cannot overcome the unambiguous contract terms, Plaintiff Rock Spring Plaza II, LLC ("Landlord") repeatedly sought to invade IWA's attorney-client privilege to support its claim that the assignment was a fraudulent conveyance. The district court has ceded to Landlord's strategy every time, and this Court has *twice* granted mandamus to vacate the orders piercing IWA's privilege. Most recently, this Court held that Landlord was not permitted to use IWA's privileged information "in any way" at trial.[1] Thwarted with respect to IWA, Landlord now focuses on Defendant Rock Springs Drive LLC ("RSD"). During the pretrial conference and argument on Defendants' motion in *limine* to exclude privileged information, the purpose of which was to preclude Landlord from inviting privilege objections in front of the

---

[1] Notwithstanding the Fourth's Circuit's directive, Landlord also stated it intends to ask IWA's witnesses questions based, at least in part, on IWA's privileged information *and* that it will ask the Court to find IWA's witnesses have committed perjury based on information and inferences that can *only* be drawn from the privileged information that this Court forbid Landlord from using. (8/8/24 Hr'g Tr. at 53:25-54:7, attached as Ex. A.)

1

jury,[2] the district court *sua sponte* held that RSD waived its attorney-client privilege because (a) RSD designated its attorney as the point-of-contact for Landlord following the assignment, and (b) RSD's attorney responded to Landlord's counsel's prelitigation demand letters. The court also stated it would permit Landlord's counsel to cross-examine RSD's lawyer and RSD's principals about their conversations, knowing RSD will be forced to object in front of the jury. The court has further advised it will then order RSD's witnesses to answer based on its erroneous understanding or intentional disregard of the attorney-client privilege. If the witnesses refuse to divulge privileged information, the court will permit Landlord to argue to the jury that Defendants are "hiding behind the privilege" as evidence that IWA's conveyance of the ground lease to RSD was fraudulent despite IWA's "absolute right" to do so.

To permit privilege objections play out in front of the jury, especially when appropriately inserted, is improper and highly prejudicial. This is especially true considering that Landlord's plan to do so is an unabashed display of gamesmanship that was not raised in any motion or prior arguments. The district court, thus far unmoved by this Court's binding orders, is still willing to allow the use of IWA's privileged information "to make a record" and will now allow RSD's privileged information to be used as well. The district court's refusal to apply this Court's

---

[2] Motion in Limine [Dkt. 480], attached as Exhibit B.

precedent in favor of its own views warrants reassignment .

To be clear, RSD does not wish to delay the trial commencing August 26 and does not request reassignment lightly. But it cannot yield without objection to a trial where the court will permit Landlord to run roughshod over RSD's attorney-client privilege in front of the jury and then exhort the jury to find fraud because RSD properly invokes the privilege. The district court's finding that RSD waived privilege merely by having its attorney respond to the letters from Landlord's attorney threatening litigation is error. *See In re Grand Jury Subp.*, <u>341 F.3d 331, 334</u> (4th Cir. 2003); *In re Fluor Intercontinental, Inc*., <u>803 F. App'x 697, 699</u> (4th Cir. 2020). Likewise, this Court has held that a "negative inference should not be drawn from the proper invocation of the attorney-client privilege." *In re Tudor Assocs., Ltd.*, *II*, <u>20 F.3d 115, 120</u> (4th Cir. 1994).

With trial less than two weeks away, it is imperative that these issues be heard on an emergency basis to avoid an expensive, lengthy jury trial riddled with reversible error. Accordingly, RSD respectfully requests that the Court vacate the district court's holding that RSD waived the privilege, preclude Landlord from asking questions intended to provoke a privilege objection, and prevent Landlord from arguing that Defendants' assertion of the privilege is evidence of fraud.

**RELIEF SOUGHT**

RSD requests a writ of mandamus to order that: (i) the district court vacate its denial of Defendants' motion in limine seeking to preserve RSD's attorney client-privilege; (ii) the district court vacate its finding that RSD waived the privilege when its lawyer, in a manner that disclosed no privileged communications, responded to pre-litigation demand letters; (iii) Landlord's counsel be precluded from asking questions that are reasonably expected to elicit an objection based on privilege; (iv) Landlord's counsel be prohibited from arguing at trial that Defendants are hiding behind the privilege; and (v) the district court not instruct the jury that it should or may draw on any adverse inference from Defendants' assertion of the privilege; and (vi) the case be reassigned upon remand.

**ISSUES PRESENTED**

(i)     Whether the court erred in denying Defendants' motion in limine seeking to preserve RSD's privilege;

(ii)    Whether the court erred in ruling that RSD waived the privilege with respect to communications between RSD and its attorney, Robert Barron, because Mr. Barron responded to pre-litigation letters sent by opposing counsel, in a manner that disclosed no privileged communications;

(iii)   Whether the court erred in finding that Landlord may ask questions that will force Defendants to object on privilege grounds in front of the jury;

(iv)    Whether the court erred in finding that Landlord's counsel will be allowed to argue that Defendants are "hiding behind the privilege";

(v)    Whether the court erred in holding that it will consider an adverse inference instruction to the jury if Defendants object on privilege grounds during trial and maintain that objection; and

(vi)    Whether the case should be reassigned on remand.

## STATEMENT OF FACTS

### I.    FACTUAL BACKGROUND

In 2017, IWA assigned a commercial ground lease to RSD, a joint venture between IWA (98% member) and non-party, Longshore Ventures LLC (2% and managing member). (IWA's Mot. for Summ. J. [Dkt. 410] at 5, attached as Ex. C.)

Both the Ground Lease and an Estoppel Agreement, executed by Landlord in 2006, gave IWA the "absolute right" to assign the Ground Lease. (*Id.* at 3.) Specifically, the Estoppel Agreement states that IWA had the "absolute right" to assign the Ground Lease to "any third party" without qualification. (*Id.* at 12.)

After the Assignment, IWA provided Landlord the requisite notice. (Defs.' Stmt. of Mat. Facts [Dkt. 410-1] & Ex. 29 thereto, attached as Exhibit D.) IWA informed Landlord that it should contact Mr. Barron if it had questions about the assignment. (*Id.*) Mr. Barron, a real estate transactional lawyer, was RSD's outside counsel and the notice included the name of his firm, Berger Singerman LLP. (*Id.*)

Since the Assignment, RSD has paid (and Landlord has accepted) every cent of ground rent. Nevertheless, within months of the Assignment, Landlord's litigation counsel, William Bosch, reached out to Mr. Barron, first by phone and then in a series of demand letters. (*Id.* at Exhs. 36, 38, 41.) RSD treated these communications as exactly what they were: self-serving prelitigation demands to support a lawsuit challenging the Assignment. Even Landlord described them as its "pre-filing investigation into RSD." (Pl.'s Opp'n to Mot. [Dkt. 352], attached as Ex. E at 6.)

After consulting with his client, Mr. Barron responded to Landlord's letters. Consistent with Mr. Barron's expectations, in June 2020, Landlord sued, claiming the Assignment was a fraudulent conveyance and that RSD is a "sham" entity even though RSD has paid Landlord more than $11 million in ground rent (Ex. D ¶ 72) and has never breached the Ground Lease.

## II.    PROCEDURAL HISTORY

### A. This Court Issued Two Writs of Mandamus Reversing the District Court's Orders Invading IWA's Privilege and Ordered that Landlord Cannot Use IWA's Privileged Material at Trial

This Court has twice vacated the district court's orders adverse to preservation of IWA's privilege. When the court held that IWA's privilege had been vitiated by the crime-fraud exception, this Court vacated the production order premised on that holding and protected IWA's privilege. Next, when the district court interpreted this Court's order to permit it to nonetheless allow Landlord to

use IWA's privileged information to impeach witnesses or otherwise during the trials, this Court directed:

> The court directs that Landlord is not entitled to receive [IWA's] privileged information, directly or indirectly, in any manner and is not entitled to use IWA's privileged information, directly or indirectly, in any way, including in briefing, in argument to the court or to the jury, or at trial. The court denies petitioner's request to reassign the case upon remand.

(Order *In re Investors Warranty of Am., LLC*, No. 24-1434 at 1, attached as Ex. F.)

The court's crime-fraud order was the result of extensive motions practice during discovery, in which the court conducted an *in camera* review and held an *ex parte* hearing. There was sufficient time for IWA to defend against Landlord's assaults on its privilege and for the district court to evaluate the issue; the same has not happened here because Landlord never challenged RSD's assertions of privilege following the depositions of Mr. Barron and RSD's principal, Troy Taylor. Despite guidance from the two writs, on the eve of trial, Landlord and the district court have shifted focus to finding a waiver of RSD's privilege.

**B. RSD's Motion to Quash Barron Subpoena**

On January 11, 2023, Landlord served RSD with a deposition subpoena for Mr. Barron. RSD filed a motion to quash, explaining that Mr. Barron's conversations with RSD about what to include or not include in his responses to Mr. Bosch were protected by the attorney-client privilege. (Dkt. 255 at 1, attached as Ex. G.) RSD contended that Landlord could obtain information from RSD's

corporate representatives about RSD's letters and did not need to depose RSD's lawyer or obtain privileged information to do so. (*Id*.) The trial court denied RSD's motion but encouraged Landlord to depose RSD's principals first and "get to Barr[o]n if need be." (*See* 2/16/23 Hrg. Tr. 107:8-11, attached as Ex. H).

### C. Deposition of RSD's Corporate Representative on Pre-Litigation Letters

Landlord deposed RSD in March 2023, and questioned Mr. Taylor about Mr. Barron's letters. For example, Landlord asked why RSD, through Mr. Barron, had not provided all the information Landlord demanded. Mr. Taylor explained repeatedly that the fact that Mr. Bosch, litigation counsel from a large law firm, reached out caused RSD to treat all communications as preparation for a lawsuit:

> [A]s I mentioned, after you reached out, there was a litigator reaching out. I didn't push them on basically us going to sit down and talk to the ground lessor. I can tell you that in every assignment I've ever had in the past, we would have basically gone to sit down with Mr. Camalier [Landlord's principal]. But the fact that he didn't reach out to me, the fact that you were reaching out to us as a litigator, your letters were very—looked like they were building a litigation file versus just kind of a business discussion. That had me sit back.

(Taylor Dep. at 282, attached as Ex. I; *see also id.* at 321:14-21.)

Landlord also questioned Mr. Taylor about the reasons RSD declined to share information with Landlord and who made that decision. During the deposition, RSD's counsel objected to a handful of questions that sought to discover privileged conversations between Mr. Taylor and Mr. Barron. (Ex. I at

341, 395-396.)

### D. Landlord's Deposition of Mr. Barron

Mr. Barron's deposition was scheduled for April 14, 2023. The day before, Landlord sought to cancel it so the district court could finish its evaluation of the crime-fraud exception against IWA. The court held a telephone conference during which counsel for RSD objected to canceling the deposition at the last minute. She explained that there was no objection to Landlord asking Mr. Barron about nonprivileged matters and explained that RSD would object to any questions that invaded the privilege:

> We will be asserting privilege to things that are conversations between Mr. Barron and his client, Rock Springs Drive; and then if the crime-fraud decision affects Mr. Barron, or has to do with any of his communications, then Landlord can of course let the Court know and seek the opportunity to depose them on those narrow issues that might be raised.

(4/13/23 Hr'g Tr. at 7:15-20, attached as Ex. J.)

Landlord agreed to depose Mr. Barron and assured the court that he could come back to challenge any of RSD's assertions of privilege that he thought were inappropriate:

> We'll make the record, which I think may be a lot of instructions not to answer, if not 99 percent of it. And then we'll have to come back to the judge, to you, Your Honor, and say now that the crime-fraud resolution is here, let's take him again and this time we'll do it with these other questions being answered.

(*Id.* at 23:4-9.)

The district court instructed Landlord's counsel to find out "specifically what [Mr. Barron] declines to answer" and then, "[p]resumably, at that point, Landlord will file a motion to compel his answer and Defendant will be able to respond, to reply." (*Id*. at 25:1-4.) The court made clear that Landlord was entitled to find out who had made the decisions in responding to Landlord's not to share all RSD's confidential information with the Landlord, but it never suggested that RSD had waived privilege by having Mr. Barron be Landlord's point-of-contact:

> MR. BOSCH: Right. So if Mr. Rubin and Mr. Taylor [RSD's principals] rely on privilege, I can't tell you why—
>
> THE COURT: Well no, we'll see what they say. If they're relying on privilege—look, it is a proper question of somebody in this story, "Why did you do that?"
>
> MS. KROPF: Of course.
>
> THE COURT: Now if everybody hides behind privilege or whatever they're going to do, we have a problem.

(Ex. H at 107.)

As noted above, Mr. Taylor had answered the question of "why did you do that?" with respect to how RSD responded to Mr. Bosch's demands during his 30(b)(6) deposition. Landlord nonetheless deposed Mr. Barron. Mr. Barron confirmed that RSD retained him as RSD's lawyer. (Barron Dep. Tr. at 87:18-88:10, attached as Ex. K.) Consistent with Mr. Taylor, Mr. Barron explained that when he received communications from Mr. Bosch, a litigator, Mr. Barron treated the matters as heading to litigation and responded accordingly on behalf of RSD:

MR. BOSCH: Q. Right. So when the affiliated entity of that other tenant sends a notice and says speak to a lawyer, you thought it would be unusual for the Camaliers to ask a litigator to reach out?

MR. BARRON: Yes, sir. In my experience in major law firms, litigators don't get involved, especially the head of litigation sections at a big law firm. I was formerly at Weil Gotshal & Manges. They don't get involved in phone calls and letters on leases unless there is litigation coming.

(Ex. K at 263:14-264:2.)

Throughout the deposition, Landlord's counsel asked questions that would require Mr. Barron to disclose his conversations with his client, in particular about the decision not to share information with Landlord in light of impending litigation. These answers implicated the attorney-client privilege, and RSD's counsel lodged numerous objections on privilege grounds.

Notably, the district court denied RSD's motion to depose Mr. Bosch about his letters, finding that Mr. Bosch's communications with his clients about the letters would be privileged. In other words, the district court has determined that Mr. Bosch's letters were not privileged while his testimony would be, but has inconsistently determined that RSD's response to Mr. Bosch's letters somehow waived the privilege.

### E. Landlord Did Not Challenges RSD's Assertion of Privilege Until the Pretrial Conference

At no point during discovery or after Messrs. Taylor and Barron's depositions did Landlord challenge RSD's assertion of privilege by filing a motion

to compel, contending the subjects were not privileged, that RSD had waived the privilege, or that the crime-fraud exception applied. Landlord's two motions for summary judgment likewise did not challenge RSD's assertion of privilege. Trial was set for August 26, 2024. Still, Landlord did not challenge RSD's assertion of privilege or move in *limine* for a determination as to RSD's assertion of the privilege. Rather, it was on Defendants' attempt to *protect* its privilege from Landlord's improper trial strategy that the Court *sua sponte* found waiver. (Ex. B.)

Specifically, Defendants asked for a pretrial ruling that Landlord be precluded from "1. referencing or alluding to any of Defendants' privileged information," "2. asking questions that are reasonably expected to elicit an objection from defense counsel on the grounds of privilege or work product," and "3. making improper argument to the jury, including, for example, that Defendants are 'hiding behind the privilege.'" (*Id*. at 5.) Landlord opposed the Motion. (Dkt. 497, attached as Ex. L.) Notably, Landlord **did not** argue that RSD had waived the privilege or that Landlord had established a prima facie case of fraud under the crime-fraud exception. Nonetheless, and notwithstanding this Court's latest writ, Landlord asserted that it "can legitimately argue that Defendants are 'hiding behind the privilege.'" (*Id.* at 9.) Landlord also made clear that it does not believe that this Court's two writs vacating the district court's orders premised on its crime-fraud rulings are binding at trial. Instead, Landlord maintained that the crime-fraud

12

exception should apply to IWA's privileged materials and promised that it would

press forward *during trial* with trying to establish that the crime-fraud exception

also applied to RSD. (*Id*. at 3 n.1 ("Although the Fourth Circuit vacated this Court's

production orders, it has made no determination that the crime-fraud exception does

or does not apply . . . . [Landlord] does not concede that the crime-fraud exception

does not apply and reserves the right to make a further prima facie showing at trial

(or otherwise) that the crime-fraud exception obviates the privilege."); *see also*

*supra* n.1.)

The pretrial conference was held on August 8, 2024. During it, the district

court *sua sponte* suggested that RSD's designation of Mr. Barron as the point-of-

contact for Landlord's questions constituted a waiver of the attorney-client privilege:

> THE COURT: The problem that I think defendants have in this case, whether you like it or not, is you were told—that Landlords were told "talk to this guy." When he would ask, "tell us what's going on." And then when they go to talk to him, apparently he shuts down.[3] Now, there may be areas where he isn't obliged. But when he shuts down, they want to basically say "these folks declined to give us answers to our questions." Now, I know apart from that, it's defendants' view that "we had no obligation to do it." Well, we'll see whether the jury agrees with that or not. But apart from that, when you tell the Landlord "go ahead and talk to this gent" and he makes certain other statements, you're into a serious waiver of privilege situation. And that's a ruling that the Court would make. And although I don't need to make it right now, I'm inclined to make it when it comes up, that he has waived any privilege when he is told by your clients "he's the man to talk to." Now that's the

---

[3] Curiously, the court has apparently decided that RSD waived the privilege even while conceding that Mr. Barron "shut[] down" and did not divulge much of anything to Landlord's attorney. (Ex. A at 39:13.)

problem. You can't have it both ways. You can't say talk to him and then say well he can't talk to you. That's not the way it is. Now, you may not have intended it, but that's the problem that you've got. Now, the issue is going to be—and you need both sides give thought. What do we do when you do say privilege? And I say well, Counsel, we'll do this at the bench. My ruling is that you waived the privilege based on what went on here. What do you think? You say now well you can't tell the jury it can make any kind of inference from that, I wonder?

(Ex. A at 39:7-40:12.) In addition to the district court's "inclination [] to find waiver,"

(*see id.* at 47:18-23), the court also implied that it would allow Landlord to

encourage the jury to draw a negative inference from Defendants' invocation of the

attorney-client privilege and ruled that RSD's assertion of privilege "was not

proper":

> THE COURT: My inclination is to find waiver here. If you think it's appealable, you can certainly try it, but I'm not going to stop the trial to let you try and do that. This is a case that it doesn't seem to me to be only extraordinary in the sense that the jury is going to hear the man, when the Court overrules your objection, and he will say, 'well, I still refuse to answer,' then the question is: What is the jury going to be told the consequence of that?
>
> [. . .]
>
> And that's Landlord's view of the case and they'll roll the dice on it, I guess. And they win or lose. And then you -- ***who knows what the Fourth Circuit would do for sure, but they can look at it after the fact.***
>
> Ms. Kropf?
>
> MS. KROPF: Your Honor, the Fourth Circuit has plainly ruled a negative inference should not be drawn from a proper invocation.
>
> THE COURT: And the proper invocation. ***But it's not proper.***

(*Id.* at 47:21-48:14 (emphasis added).) Indeed, the district court held that RSD's

invocation of privilege was "not proper" even though the matter had never been briefed or argued after RSD invoked it at Mr. Barron and Mr. Taylor's depositions over a year ago. And because of that erroneous finding, the court indicated it was inclined to let Plaintiff invite the jury to draw an adverse inference, or to even instruct the jury to draw an adverse inference, based on RSD's invocation of privilege.

The district court made clear that rather than deciding privilege issues before trial, it would permit Landlord to ask questions at trial that would elicit privilege objections from the defense, and then decide the matters during trial on a question-by-question basis.

Perhaps most concerning, the court stated that it would be disinclined to treat this Court's ruling as anything other than mere "advice":

> THE COURT: I looked at it slightly differently that there might be a waiver on the whole issue. Not that's going to tell you on the stand—and I am hearing Ms. Kropf with her argument that maybe she's saying she's going to instruct him not say anything on the stand. And then what? And then she wants to go the Fourth Circuit for the third time in the middle of the trial. You know, that's—what about that? What do you think about going to the Fourth Circuit in the middle of the trial? This case will never get tried with all these interlocutory appeals.
>
> MS. BAUM: We would like the case to just get tried, Your Honor.
>
> THE COURT: The case will get tried. Whether she can get somehow get a stay from the Fourth Circuit to answer each issue that I think you may find troublesome, I've got to run the train here. I ***can't just keep stopping to allow independent Fourth Circuit advice. That's not the way it gets done.***

(*Id*. at 45-46.)

The district court made clear that its ruling about waiver was final and that Defendants could appeal it, but that the court would not stop trial to "let you try to do that." (*Id*. at 47-48.)

On waiver, the court held that the fact that Mr. Barron sent letters to Mr. Bosch and did not provide all facts known to him as RSD's counsel mean that RSD had "selectively waived" privilege.

> THE COURT: [. . .] I need to hear specific questions and specific answers. It is clear there may be a repository of questions that might be put to Barron that really do invade the attorney/client privilege. I haven't heard them yet, but there may be. I have to hear them as they come.
>
> Right now, when he's—again, I'm giving you my view—that when he is told to be the guy to contact and he basically says, "I'm instructed not to tell you anything." then what? What are they supposed to do?
>
> MS. KROPF: Your Honor, I don't want to re-argue it, but there are long letters from Mr. Barron where he did give information. They can argue that wasn't enough and it wasn't what they asked.
>
> THE COURT: But, but the letters that he gave and the information would pose part of the waiver. You can't be selective.
>
> MS. KROPF: No. They are letters to a third party. There is absolutely no waiver in a lawyer writing a letter to a third-party.
>
> THE COURT: Okay. I simply need to see the questions and answers. Right now I think I'm inclined to be where I am. And I know where you are. And you better prepare for it.

(*Id*. at 49:10-50:8.)

The court denied Defendants' Motion in Limine without prejudice, permitting

Landlord to question Defendants' witnesses about privileged matters, forcing defense counsel to object to each question in front of the jury, and then, if Defendants maintain their objection over the court's erroneous finding of waiver, permit Landlord to argue to the jury that Defendants are "hiding behind the privilege."[4]

## **ARGUMENT**

### I.    **Standard of Review**

Mandamus relief is warranted where: (1) the petitioner's right to the writ is "clear and indisputable"; (2) there is "no other adequate means to attain the relief [the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (*citing Cheney v. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380- 81 (2004) (quotation marks omitted); *see also Fluor*, 803 F. App'x at 699. Mandamus is an appropriate vehicle for securing review of orders requiring the production of documents that raise "novel" and "injurious" issues of attorney-client privilege. *See Mohawk Indus., Inv. v. Carpenter*, 558 U.S. 100, 110-11 (2009); *see also* 16 Wright et al., Fed. Practice & Proc. § 3935.3 (3d ed. 2014); *see, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014); *In re Itron, Inc.*, 883 F.3d 553, 567-68 (5th Cir. 2018); *In*

---

[4] Mr. Barron, RSD, and RSD's trial counsel also risk a contempt ruling in the middle of trial. This is an untenable, chaotic, and patently unfair situation for the district court to create, particularly when it could have been addressed in a timely fashion during discovery. Moreover, in light of this risk, RSD must also question whether to even ask Mr. Barron to testify at trial.

*re Lott*, 434 F.3d 446, 450-51 (6th Cir. 2005); *Fluor*, 803 F. App'x at 699-703.

Mandamus review of orders involving the privilege is proper where: "(i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege." *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992).

## II.     RSD'S Right to Mandamus Is Clear and Indisputable

### A. RSD's Communications with its Attorney, Robert Barron, Are Protected by the Attorney-Client Privilege and Not Admissible in Evidence

"[T]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Id*. If the privilege applies, it "affords all communications between attorney and client absolute and complete protection from disclosure." *Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004).

Privileged information is not admissible in evidence. *Smith v. State*, 394 Md. 184, 213 (2006) (disclosure in violation of privilege was not admissible and judge

could not rely on it); *Carter v. State*, 149 Md. App. 509, 513, 519-20 (2003); *Newman v. State*, 384 Md. 285, 304-05 (2004) (noting that privileged information is inadmissible and admitting testimony in violation of privilege was reversible error); *Huester v. Clements*, 252 Md. 641, 648 (1969) ("Once the relationship of attorney and client was established, *a fortiori*, the communication was confidential, and inadmissible in evidence."); *Tillinghast v. Lamp*, 168 Md. 34, 42 (1935).

RSD's communications with Mr. Barron are quintessential attorney-client privileged communications. They were made for the purpose of securing legal advice and in anticipation of litigation after Landlord's litigation counsel, Mr. Bosch, sent multiple prelitigation demands. Notably, the court has indicated that any testimony Defendants would hope to solicit from Mr. Bosch about the content of his written demands *would be* privileged but has now held that Mr. Barron has waived the privilege simply by responding in kind. This conclusion is based, in part, on the misguided notion, urged by Landlord, that Mr. Barron held "dual roles" such that not all of his communications with RSD are privileged. This is factually and legally inaccurate. While it is true that the boundaries of the privilege are blurred where a person, such as in-house counsel, also holds a business role, that is not the case here. At all relevant times, Mr. Barron was *only* RSD's *outside* legal counsel and no evidence supports the argument that Mr. Barron was acting in any other capacity. (Ex. K at 87.) Mr. Barron's role as counsel did not magically

transform when IWA notified Landlord that it could direct questions about the Assignment to him. Thus, Landlord's argument—which the district court did not reject—that Mr. Barron's communications are not privileged because he had a "dual capacity" is without merit.

### B. RSD Did Not Waive Privilege by Having Mr. Barron Respond to Landlord's Pre-Litigation Letters

To find waiver, a court must find that there has been "disclosure of a communication or information covered by" privilege. Fed. R. Evid. 502. Courts will not infer a waiver because a party's disclosure covers "the same topic" as that on which it had sought legal advice. *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018).

In *In re Grand Jury Subpoena*, 341 F.3d 331, 334 (4th Cir. 2003), this Court held that held that there was no waiver when the appellant answered questions on a publicly filed document based on the advice of his attorney, explaining that "[t]he underlying communications between Counsel and Appellant regarding his submission of [the publicly filed document] are privileged, regardless of the fact that those communications may have assisted him in answering questions in a public document." *Id*. That a party "may have answered a question in a particular way on the advice of his attorney does not subject the underlying attorney-client communications to disclosure." *Id*. In *Fluor*, the Court explained that whether the party's statements were informed by legal advice "is not the test for whether

waiver of attorney-client privilege has occurred. Instead, to find waiver, a court must conclude that there has been disclosure of protected communications." *Id.* at 702. There, the fact that the party's disclosure to regulators "covered the same topic" as the advice of counsel "doesn't mean that privileged communications themselves were disclosed." *Id*.

The district court erred by finding waiver when Mr. Barron responded to Mr. Bosch's prelitigation letters. Mr. Barron's letters do not disclose communications with RSD. Instead, the letters convey *facts* about the property and then *decline* to provide further information because RSD had no legal obligation to do so. If the district court's ruling were correct, then every time a lawyer writes a letter to opposing counsel, it would waive the lawyer's communications with her client about the letter, including the decision to include certain facts in the letter or not include them. Mr. Barron's discussions and advice about what to include or exclude in the response letter are privileged. The district court's finding of waiver should be vacated.

### C. It Is Reversible Error to Allow Landlord to Invite the Jury to Draw an Adverse Inference from RSD's Invocation of Privilege

The court also erred when it held that these privilege issues may be played out in front of the jury and that Landlord would be permitted to argue that RSD was "hiding behind the privilege" if RSD objects and/or refuses to divulge privileged

information over an erroneous finding of waiver.[5]

A "negative inference should not be drawn from the proper invocation of the attorney-client privilege." *In re Tudor*, 20 F.3d at 120; *see also Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (per curiam) ("[A] client asserting the privilege should not face a negative inference about the substance of the information sought.").

Thus, courts, including those in this Circuit, routinely preclude litigants from introducing evidence or making statements intended to induce the jury to draw an adverse inference from their adversaries' invocation of privilege. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 4156858, at *5 (E.D. Va. Apr. 5, 2023) ("[T]he motion is GRANTED to the extent it seeks to preclude Purchasers from asking questions with the intention of causing Defendants to invoke privilege in front of the jury, or asking questions to elicit the fact that privilege was previously invoked."); *Sharer v. Tandberg*, 2007 WL 983849, at *1-2 (E.D. Va. Mar. 27, 2007) (barring any reference at trial to Landlord's invocation of privilege); *see also Datapoint Corp. v. Picturetel Corp.*, 215 F.3d 1344, 1999 WL 507141, at *4 (Fed.

---

[5] Plaintiff argued it would ask for an adverse inference instruction along the lines of a spoliation instruction if the district court ordered Mr. Barron—during trial—to answer questions that required him to disclose privileged communications. (*Id.* at 47 ("And then, moreover, if it's not privileged and Your Honor says it's not privileged, it's tantamount to spoliation. . . . So, I think it would be similar to a spoliation instruction, Your Honor, would be appropriate.").)

Cir. July 15, 1999) ("A jury should not be invited or instructed to draw a negative inference from a proper invocation of the attorney-client privilege."); *Beraha v. Baxter Healthcare Corp.,* 1994 WL 494654, at *3 (N.D. Il. Sept. 6, 1994) ("[T]he only purpose for which Beraha seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. This is exactly what is prohibited."); *Broyles v. Cantor Fitzgerald & Co.*, 2016 WL 7656028, at *2 (M.D. La. Sept. 8, 2016) (precluding Landlord from arguing defendants asserted privilege "merely to conceal the truth from the jury"); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[T]he policy behind the attorney-client privilege was paramount and trumped the questioner's right to acquire information.").

The district court erred by holding that Landlord can ask questions at trial that have no purpose other than to force RSD to invoke the privilege in front of the jury and to encourage the jury to draw a negative inference as a result. This ruling violates this Court's decisions in *Tudor Associates* and *Parker*.

Not only has the Fourth Circuit made clear that the jury may not draw a negative inference based on Defendants' invocation of the privilege, but it has also held that a party cannot ask questions at trial to elicit testimony that would cause the jury to draw an inference about the substance of an attorney-client communication. Yet, that is precisely what Landlord hopes to accomplish when it

asks Mr. Barron about RSD's "instructions" in responding to Landlord's demands. (*See* Ex. A at 35:4-15.) In *Parker*, the court allowed defendant to narrowly question the plaintiff's lawyer about his actions but did not allow questioning as to the substance of the legal advice given to plaintiff regarding cashing an insurance check. 900 F.2d at 775. Specifically, the defendant was allowed to elicit only that: (i) the lawyer represented plaintiff; (ii) he attempted to collect benefits under an insurance policy; (iii) he discussed "the issue of accepting the check" with plaintiff; and (iv) plaintiff directed her lawyer to obtain the insurance premium refund check thereafter. The court directed a verdict against plaintiff for accord and satisfaction because she cashed the check. The Fourth Circuit reversed, holding the trial court "impermissibly used testimony from [the attorney] to draw an inference *about the substance of* [*Landlord's*] conversations with him" and relied on that testimony in its ruling, noting:

> [T]he [attorney's] testimony is only probative if one infers that the attorney told her acceptance of the check either would or would not waive further claims for the policy benefits. Any such inference would intrude upon the protected realm of the attorney-client privilege. The privilege was created to protect the right to effective counsel. '[A]n individual in a free society should be encouraged to consult with his attorney whose function is to counsel and advise him and he should be free from apprehension of compelled disclosures by his legal advisor.' [*cits.*]. To protect that interest, **a client asserting the privilege should not face a negative inference about the substance of the information sought.**

*Id.* (emphasis added). When the defendant complained that a rule prohibiting an

inference about the *substance* of the privileged communication made it difficult to prove that the Landlord had knowledge regarding the legal effect of accepting the check, the Fourth Circuit noted:

> [The defendant] misstates the issue. The legal effect of depositing the check depends on the terms of the agreement, if any, between the parties. [The defendant] bears the burden of proving that agreement. Plaintiff had no duty to disclose the contents of her conversations with her attorney or to produce any other evidence on the issue. Any difficulties in proof faced by [the defendant] stem from its failure to obtain a clear agreement, not from plaintiff's invocation of the attorney-client privilege.

*Id.* at 775-76; *see also Sharer*, 2017 WL 983849, at *2 (relying on *Parker* to hold that defendant could not ask about the fact that plaintiffs consulted with attorney prior to sending an email because it would invite an improper inference about the subject matter of the communication, which would invade the privilege and unfairly prejudice plaintiffs).

Nor should the district court permit Landlord to argue, reference, and elicit evidence that Defendants have asserted the privilege in this case.[6] The fact that Defendants have properly invoked the privilege is not relevant to any issue in dispute, and it is error to permit Landlord to argue that RSD's assertion of the privilege is evidence that RSD participated in a fraudulent conveyance. *See*

---

[6] Plaintiff has designated deposition testimony of Mr. Barron for submission to the jury where RSD asserted a privilege objection and instructed Mr. Barron was instructed not to answer for the sole purpose of showing the jury that RSD has asserted the privilege.

*Broyles*, 2016 WL 765028, at *2 (precluding defendant from "offering any evidence or argument concerning the [plaintiff's] invocations of their attorney client privilege" because "calling the jury's attention to that privilege would only serve to imply that the jury should draw an adverse inference, which this Court finds to be improper."); *see also United States v. Morris*, 988 F.2d 1335, 1338, 1339 (4th Cir. 1993) (holding it was reversible error to ask questions and elicit testimony about the fact that spouse previously asserted a marital privilege against testifying); *Hagez v. State*, 110 Md. App. 194 (Md. Ct. Spec. App. 1996) (holding it was reversible error for court to allow prosecutor to ask questions of spouse it knew intended to assert a martial privilege).

For these reasons, the district court's denial of Defendants' Motion *in Limine*, its intent to allow Landlord to ask questions intended to elicit a privilege objection, and to permit the jury to draw a negative inference from Defendants' invocation of the privilege are error and must be corrected in advance of trial.

### III. The District Court's Erroneous Ruling Will have a Destabilizing Effect and a Widespread Impact on an Important Area of Law

"An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. Mandamus therefore will lie where a district court's decision "generate[s] substantial uncertainty about the scope of the attorney-client privilege in the business setting." *Kellogg*, 756 F.3d at 756. If the court's order

stands, it would turn routine responses to pre-litigation demand letters into a waiver under the theory that responding is a "selective waiver" even where *no privileged communications are disclosed*. Facing this Hobson's choice, a lawyer would choose not to respond at all even when a response may avoid litigation altogether. Allowing the court's order to stand would signal that there is no protection for lawyers or clients who seek legal counsel to determine how best to respond to demands and threats of litigation from opposing counsel.

## IV.    The Case Should Be Reassigned on Remand

The district court has refused to give full faith and credence to this Court's rulings. (*See* Ex. A at 46:11-13 ("independent Fourth Circuit advice").) The court has shown an immutable desire—even after this Court granted mandamus *twice*—to eradicate Defendants' privilege. Defendants should not be forced to face a jury trial that will be irreparably tainted because they properly asserted the privilege. Defendants are entitled to a fair trial where the judge will not allow Landlord to turn the proper privilege objections into a jury talking point or evidence of "fraud." This case should be reassigned on remand to an impartial jurist that will follow this Court's rulings and not take such a cavalier approach to the privilege. Defendants recognize that the district court has a long, distinguished career on the bench, but requests that this Court not defer to that seniority at the expense of a fair trial for Defendants.

Upon remand, this Court may "reassign it to a different judge when the appearance of fairness and impartiality is best advanced by reassignment," considering: "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous . . .; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. McCall*, 934 F.3d 380, 384 (4th Cir. 2019) (internal citations omitted). Each factor weighs heavily towards reassignment.

## A.    The District Court has Already Demonstrated an Unwillingness to Acknowledge Error

The district court has already demonstrated an unwillingness to recognize error, and to "put[] out of his  . . . mind" his previously expressed views and erroneous findings.  Indeed, with respect to IWA's privileged information, the court refused to agree that it could put IWA's privileged information out of its mind, going so far as to state on the record its view that IWA's privileged information cuts against IWA's claim that it acted in good faith. (*See* 5/1/24 Hr'g at 11:10-22, 30:6-12, attached as Ex N.) The court further committed only that he would "try" to provide IWA a fair trial and would do his "best" to be impartial. (*Id.* at 30:2-5.) Notably, even after two *writs* of mandamus determining that Landlord is not entitled to IWA's

privileged information and cannot use it, the trial court agreed that Landlord could try to make a new crime-fraud showing at the bench during trial by using IWA's privileged information to argue that a witness has committed perjury for purposes of the appellate record. (Ex. A at 53:25-54:7.)

Here, the district court has already been reversed twice on its use of the crime-fraud exception against IWA. It once again plans to pierce the privilege, this time against RSD, using a theory of waiver where there has been none. Reassignment is appropriate.

**B.    Reassignment is Advisable to Preserve the Appearance of Justice**

Second, "reassignment is advisable to preserve the appearance of justice." *McCall*, 934 F.3d at 384. Here, the trial court decided the privilege had been waived even where Landlord had never argued that there was a waiver before the court brought it up on its own initiative. The court has made statements during hearings calling this Court's privilege rulings "independent Fourth Circuit advice"—not binding precedent or law of the case. And despite this Court's order that the district court was not to allow Landlord "to use IWA's privileged information, directly or indirectly, in any way, including in briefing, in argument to the court or to the jury, or at trial," (*see* Ex. F), the court now plans to allow Landlord to use RSD's privileged information in "argument . . . to the jury." While this Court's ruling was limited to IWA, there is little question that the district court plans to ignore these

admonitions entirely when it comes to RSD.

To prevent manifest injustice, to maintain public faith in the integrity of the judicial system, and to limit the errors that will be brought up on appeal, reassignment is warranted.

### C.     Reassignment Will Not Result in an Unreasonable Duplication

Third, this Court "will more freely reassign a case when it will not require substantial duplication of effort." *McCall*, 934 F.3d at 384. Defendants recognize that reassignment will require some duplication and likely a short delay of the trial date to permit the new judge to get up to speed. However, what remains in the case are only pretrial rulings and the trial itself. This duplication of effort is necessary to ensure Defendants have a fair trial and will limit the possibility of an appeal based on the trial court's erroneous and reversible rulings on privilege—and the need for a second trial down the road to correct them.

Dated: August 14, 2024

> Respectfully submitted,
>
> /s/ Sara E. Kropf
> Sara E. Kropf, Esq.
> KROPF MOSELEY PLLC
> 1100 H Street NW, Suite 1220
> Washington, DC 20005
> (202) 627-6900
> sara@kmlawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This answer complies with the type-volume limitations of <u>Federal Rule of Appellate Procedure 21(d)(1)</u> because it contains 7,711 words.

This answer complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: August 14, 2024

/s/ Sara E. Kropf
Sara E. Kropf, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 14th day of August 2024, a copy of this petition was sent

by overnight mail to:

> The Honorable Peter J. Messitte
> United States Courthouse
> 6500 Cherrywood Lane, Suite 475
> Greenbelt, MD 20770

On this day, a copy of this petition was served electronically on the

following parties:

| | |
|---|---|
| William Bosch<br>Katherine Danial<br>Alvin Dunn<br>Nicole Steinberg<br>PILLSBURY WINTHROP<br>SHAW PITTMAN LLP<br>1200 Seventeenth Street, N.W.<br>Washington, DC 20036<br>william.bosch@pillsburylaw.com<br>katherine.danial@pillsburylaw.com<br>alvin.dunn@pillsburylaw.com<br>nicole.steinberg@pillsburylaw.com<br><br>*Counsel for Rock Spring Plaza II, LLC* | Rebecca A Davis<br>Arnall Golden Gregory LLP<br>171 17th Street, Suite 2100<br>Atlanta, Georgia 30363<br>rebecca.davis@agg.com<br><br>*Counsel for Investors Warranty of America LLC* |

/s/ Sara E. Kropf
Sara E. Kropf, Esq.