NO. 24-1761

# United States Court of Appeals

*for the*

# Fourth Circuit

———————❖———————

In re: ROCK SPRINGS DRIVE, LLC

*Petitioner*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## RESPONDENT ROCK SPRING PLAZA II, LLC'S ANSWER IN RESPONSE TO ROCK SPRINGS DRIVE, LLC'S EMERGENCY PETITION FOR WRIT OF MANDAMUS

WILLIAM M. BOSCH
DEBORAH B. BAUM
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW Washington
DC 20036
(202) 663-8000
william.bosch@pillsburylaw.com
deborah.baum@pillsburylaw.com

JEFFREY P. METZLER
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Respondent*

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................. ii

II.  STATEMENT OF THE ISSUES ............................................... 4

III.  STATEMENT OF THE CASE ................................................. 4

    A.  Factual Background ........................................................ 4

    B.  Procedural History ......................................................... 9

        1.  Mr. Barron's Deposition ......................................... 9

        2.  Defendants' Motions in Limine ............................... 10

        3.  The Pretrial Conference ......................................... 11

        4.  RSD's Petition for Writ of Mandamus ....................... 15

IV.  ARGUMENT ................................................................... 15

    A.  RSD has Not Established that it is Entitled to the Extraordinary Relief of Mandamus ...................................................... 15

    B.  The District Court Properly Denied Defendants' Motion in Limine Without Prejudice ....................................................... 17

        1.  Privilege Questions Must be Resolved Question-by-Question ....... 18

        2.  Expected Objection is not an Appropriate Standard for Limiting Plaza's Examination at Trial Given Defense Counsel's Overbroad Assertions of Privilege ................... 21

        3.  Privilege Issues Can be Resolved Outside of the Presence of the Jury, and it is Premature to Determine How the Jury Should be Instructed ........................................... 23

    C.  The District Court Did Not Rule that RSD Waived Privilege by Responding to Plaza's Letters .......................................... 24

    D.  There Is No Basis for Reassignment ................................... 25

        1.  The District Court has Followed the Orders of this Court ........ 26

        2.  There Is No Appearance of Injustice ............................ 28

        3.  After More Than Four Years of Fact-Intensive Litigation, the District Court is Prepared to Fairly Try This Case ............ 29

V.  CONCLUSION .................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Allen v. TV One, LLC*,
 2016 WL 7157420 (D. Md. Dec. 8, 2016)........................................................... 25

*Allied Chem. Corp. v. Daiflon, Inc.*,
 449 U.S. 33 (1980) ............................................................................................. 16

*Bayer Ag v. Housey Pharmaceuticals, Inc.*,
 2002 WL 31433303 (D. Del. June 20, 2002)...................................................... 23

*Cheney v. U.S. Dist. Ct. for D.C.*,
 542 U.S. 367 (2004)............................................................................................ 16

*Collette v. Sarrasin*,
 193 P. 571 (Cal. 1920) ....................................................................................... 20

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
 511 U.S. 863 (1994)............................................................................................ 17

*Diversified Dev. & Inv., Inc. v. Heil*,
 889 P.2d 1212 (N.M. 1995) ................................................................................ 19

*E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*,
 351 Md. 396 (1998)............................................................................................. 20

*E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*,
 564 F. App'x 710 (4th Cir. 2014) ....................................................................... 18

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
 822 F.3d 709 (4th Cir. 2016)............................................................................... 28

*Hon. Hubert L. Will v. U.S. Dist. Ct. for the N. Dist. of Ill.*,
 389 U.S. 90 (1967).............................................................................................. 16

*In re Grand Jury Proceedings*,
 727 F.2d 1352 (4th Cir. 2011)....................................................................... 19, 25

*In re Martin Marietta Corp.*,
 856 F.2d 619 (4th Cir. 1988)............................................................................... 24

*In re Ralston Purina Co.*,
  726 F.2d 1002 (4th Cir. 1984) ............................................................... 16

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir.1982) ................................................................ 25

*In re Zetia (Ezetimibe) Antitrust Litigation*,
  2023 WL 4156858 (E.D. Va. Apr. 5, 2023) .......................................... 21

*Kerr v. U.S. Dist. Ct. for N. Dist. of California*,
  426 U.S. 394 (1976) ............................................................................... 15

*Mohawk Industries, Inc. v. Carpenter*,
  558 U.S. 100 (2009) ............................................................................... 17

*N.L.R.B. v. Interbake Foods, LLC*,
  637 F.3d 492 (4th Cir. 2011) ................................................................. 18

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*,
  230 F.R.D. 398 (D. Md. 2005) ............................................................... 20

*People v. Tucker*,
  395 P.2d 449 (Cal. 1964) ....................................................................... 20

*Solis v. Food Employers Labor Relations Ass'n*,
  644 F.3d 221 (4th Cir. 2011) ................................................................. 19

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  988 F.3d 690 (4th Cir. 2021) ................................................................. 26

*United States v. (Under Seal)*,
  748 F.2d 871 (4th Cir. 1984) ................................................................. 20

*United States v. Cohn*,
  303 F. Supp. 2d 672 (D. Md. 2003) ....................................................... 20

*United States v. Galecki*,
  932 F.3d 176 (4th Cir. 2019) ................................................................. 27

*United States v. Jones*,
  696 F.2d 1069 (4th Cir. 1982) ............................................................... 25

iii

*United States v. North Carolina*,
  180 F.3d 574 (4th Cir. 1999)................................................................. 26

*Univ. of Pennsylvania v. E.E.O.C.*,
  493 U.S. 182 (1990) ............................................................................. 18

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ............................................................................. 19

## **Other Authorities**

*Attorney–Client Privilege in the United States* § 6:22............................................. 19

*Attorney-Client Privilege in the United States* § 10:8 ............................................ 23

*Extraordinary Writ or Ordinary Remedy? Mandamus at the Federal Circuit*,
  100 Wash. U. L. Rev. 327 ..................................................................... 16

## I.      INTRODUCTION

Petitioner-Defendant Rock Springs Drive, LLC ("RSD") mischaracterizes its Emergency Petition for Writ of Mandamus (the "Petition") as another chapter in the parties' disagreement over whether memos relating to Co-Defendant Investors Warranty of America, LLC's ("IWA's") plan to transfer its ground lease to an empty shell company were protected by the attorney-client privilege or discoverable under the crime-fraud exception. However, this Petition has nothing to do with the crime-fraud exception or the documents addressed in this Court's prior orders.[1] In a Petition in which RSD seeks to convince this Court to reassign the case, its blurring of the issues on this important point could create a misimpression that the Court's prior mandamus order is not being followed by the district judge – which is not at all the case.

The issue in this Petition is whether Defendants can broadly shield RSD's attorney-mouthpiece Robert Barron – who was designated as RSD's informational point of contact – from any inquiry about his selective disclosure of information and

---

[1] *See In re Investors Warranty of America, LLC,* No. 23-1928 (4th Cir., Sept. 6, 2023), Dkt. No. 1; *In re Investors Warranty of America, LLC,* No. 24-1434 (4th Cir., May 13, 2024), Dkt. No. 1. RSD's counsel conceded this point during the pretrial conference, responding to the trial judge's observation that "[t]he Fourth Circuit did not talk about Mr. Barron," by saying, "Your Honor, because it has never been challenged and they have never asserted crime fraud as to him. So, yes, you're correct, Your Honor . . . it has never gone up to the Fourth Circuit." R.A.203. (Citations in the form "R.A.__" are citations to the accompanying Respondent's Appendix.).

1

the parameters of that disclosure, simply because Mr. Barron is an attorney. Contrary to RSD's claim, Mr. Barron did not merely "respond[] to [Plaza's] prelitigation letters," *see* Pet. at 21. Plaintiff-Respondent Rock Spring Plaza II, LLC ("Plaza") only wrote to Mr. Barron in the first instance not because he was counsel to RSD, but because he had been designated as the informational point of contact. Indeed, Mr. Barron played an active role in concealing the relationship between RSD and IWA despite Plaza's repeated inquiries about who RSD truly is and whether it had the capacity to perform. Plaintiff is not seeking to ask Mr. Barron at trial about his role as counsel to RSD, but rather about his role as spokesperson for RSD and his selective disclosure of facts in that capacity.[2] Indeed, Defendants also designated Mr. Barron as a fact witness from whom they intended to elicit testimony at trial.

Notwithstanding, Defendants filed a motion in limine to preclude Plaza from asking Mr. Barron any question "reasonably expected to elicit an objection from defense counsel on the grounds of privilege or work product." *See* Pet. Ex. B at 5. But given the unique and central role that Mr. Barron played in IWA's assignment of its ground lease to RSD (the "Assignment") and its aftermath, there are many

---

[2] The information he withheld, for example, included the fact that IWA continued to hold 98% of the purported "third party" assignee, was its sole source of funding, and actually controlled all of RSD's major decisions – including whether to even speak with Plaza. RSD's lawyers, including the lawyers representing them in these proceedings, are all paid for by IWA. And RSD was never intended to exist past the statute of limitations on a fraudulent transfer claim.

questions that could be posed to Mr. Barron that do not seek privileged information, but which could elicit a privilege objection from defense counsel. As the district court properly recognized, these are not susceptible to a blanket ruling "in a vacuum." *See* R.A.220.

Contrary to RSD's assertion, the district court did *not* hold (and Plaza does not argue) that RSD broadly waived privilege simply because Mr. Barron "responded to … prelitigation letters." Pet. at 21. Rather, the trial judge expressed several times that he needed "to hear specific questions and specific answers" before he could issue a ruling. *See* R.A.220. And the denial of Defendants' motion was *without prejudice*, meaning Defendants may still object to any question they believe calls for privileged information. This determination was particularly appropriate given the potential for Defendants to employ privilege as a "sword and shield," a tactic routinely rejected in this Circuit.

Finally, RSD's concerns regarding a potential improper adverse inference are overblown as Plaza has never intended or understood that privilege issues would be resolved in front of the jury. Pursuant to the district court's inherent authority to manage trials, the very experienced district judge assigned to this case can resolve issues of privilege as they arise in the context of the trial, but outside the presence of the jury as needed. That RSD may ultimately disagree with some of the district

court's evidentiary rulings hardly warrants the extraordinary and uncommon remedy of mandamus.

In short, RSD's Petition should be denied and this case should proceed to trial before the district judge who has lived with this case for four years, and who has set forth a plan to try this case fairly beginning six days from now.

## II.    STATEMENT OF THE ISSUES

(1)    Should the Court of Appeals reverse the district court's denial, without prejudice, of Defendants' motion in limine seeking to preclude the Plaintiff from asking the broad, non-specific category of any question that may "reasonably be expected to elicit a privilege objection from defense counsel?"

(2)    Should the Court of Appeals issue an advisory opinion before trial whether Mr. Barron waived the attorney-client privilege without further factual development or a ruling by the district court on the issue?

(3)    Should the Court of Appeals determine, in advance of trial and before the parties have requested jury instructions, how the trial court must instruct the jury?

(4)    Should this case be reassigned on remand?

## III.    STATEMENT OF THE CASE

### A.    Factual Background

This case involves the fraudulent conveyance of the tenant's interest and obligations (the "Leasehold Estate") under a 99-year ground lease (the "Ground Lease"). In July 2016, four years after IWA made its decision to take title to the

4

Leasehold Estate, IWA's parent company, Transamerica, determined that the Ground Lease was a financial drain, and it wanted an "exit strategy on this to get [the Ground Lease] off the books," asking, "Is it even possible to just walk away from the agreement?" R.A.267. IWA's asset management team "engaged outside counsel to explore an exit which would stop the monthly losses and any future liability." R.A.267.

The "exit strategy" IWA devised "to stop future liability under the ground lease" (R.A.44) was to assign the Ground Lease to a sham entity that IWA would create and control and that would strategically default on the Ground Lease in three years, just after the statute of limitations for fraudulent conveyance claims would have expired. R.A.42-44; R.A.47; R.A. 63. That sham entity is RSD.

IWA retained a 98% interest in RSD and recruited restructuring experts from Algon Group, acting through a special purpose entity ("SPE"), Longshore Ventures LLC ("Longshore" or the "Algon Member"), to hold the remaining 2% interest. R.A.121. Longshore paid nothing for its interest. R.A.121; R.A.132. IWA reserved the option to reacquire the Algon Member's 2% interest for $1,000 at any time. R.A.067; R.A.121. RSD had no independent source of revenue; it was funded exclusively by voluntary contributions from IWA, which committed only $3.9 million, barely enough to cover rent and operating expenses for three years. *Id*.

During the three-year statute of limitations period, IWA hid both RSD's design and the fact that IWA remained in control of RSD. IWA appointed Algon's outside counsel, Mr. Barron, to serve as the mouthpiece for RSD (R.A.147.) and decided not to record the assignment or pay recordation taxes. R.A.150; R.A.156. IWA directed Longshore to make no attempt to sell the Property for three years (R.A.057; R.A.133-136) and directed RSD not to communicate with Plaza for the same three years. R.A.053-56.

Once the statute of limitations had run, IWA and RSD "would be turning the keys over to the landlord," leaving Plaza to chase an empty shell. R.A.066; *see also* R.A.051-52. At the time of RSD's formation, Defendants not only planned to leave Plaza high and dry after the statute of limitations ran but also agreed to dissolve RSD by no later than August 1, 2026, with more than 60 years left on the Ground Lease. R.A.101.

IWA, a well-capitalized company with over $650 million in assets and no debt, indisputably had the ability to fulfill its obligations under the Ground Lease, including its obligations to pay Ground Rent and to maintain the Property. R.A.271. Before the Assignment, Plaza had no reason to believe IWA would be unable to perform its obligations under the Ground Lease or would otherwise impair the value of the Ground Lease.

6

IWA notified Plaza that it had assigned the Ground Lease to RSD on August 31, 2017 – but said nothing more about RSD. R.A.148. IWA sent Plaza a two-sentence letter stating only:

> Pursuant to Sections 12 and 19 of the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006, Tenant has entered into an Assumption and Assignment of Ground Lease, dated August 31, 2017, with Rock Springs Drive, LLC, a Maryland limited liability company.
>
> If you have any questions, please contact Robert Barron at the following:
>
> Berger Singerman
> 350 East Las Olas Boulevard, Suite 1000
> Fort Lauderdale, FL 33301

R.A.148.

IWA designated Mr. Barron to front for RSD because, in the words of one of RSD's principals, "[t]he [RSD] management committee [controlled by IWA] basically felt that Mr. Barron should be the point of contact and basically we should have as little contact with [Plaza] as possible and Mr. Barron would be the mouthpiece, at least for the near term." R.A.233.

Plaza (through counsel) contacted Mr. Barron by telephone to determine who RSD was, and whether it had the ability to fulfill tenant's obligations under the Ground Lease. R.A.158. But Mr. Barron had been instructed by IWA to delay having discussions with Plaza about the Ground Lease or about RSD for approximately

7

thirty-six months, until after the statute of limitations for fraudulent conveyance claims had run, and so he evaded Plaza's questions. R.A.054-56.

In response to Plaza's initial outreach, Mr. Barron agreed only to contact RSD about brokering an introduction, and he requested a point of contact for Plaza. R.A.158. On September 29, 2017, Plaza wrote to Mr. Barron to provide wiring instructions and a point of contact, as he had requested. R.A.158. Mr. Barron refused to reciprocate with the information about RSD that Plaza had requested. On February 22, 2018, five months after Plaza first requested information from Mr. Barron, Plaza wrote to him again to follow up on its request for information about RSD's identity and intentions. Pet. Ex. D at 36-37. Over a month later, on March 30, 2018, Mr. Barron responded but again refused to provide additional information or schedule a meeting. R.A.163. Mr. Barron's March 2018 letter did include, however, several statements about communications between RSD, Mr. Barron, and his law firm, as well as several pieces of information that Mr. Barron indicated RSD had provided to him. Mr. Barron wrote that "Tenant has informed us …" about several actions it had taken with respect to the Property. Mr. Barron also wrote that "we are advised that Tenant" was evaluating certain tax issues related to the property." R.A.163-166.

Plaza responded to Mr. Barron on April 25, 2018, again requesting basic information about RSD. *See* Pet. Ex. D at 39-41. When Mr. Barron failed to respond, Plaza sent another letter on June 6, 2019, inquiring about the lack of communication

and commercial activity at the Property. *See* Pet. Ex. D at 43-44. On June 13, 2019, Mr. Barron responded, stating that RSD was only willing to engage in discussions with Plaza if it was "willing to restructure the entire rental obligations under the Ground Lease and/or provide financing upon acceptable terms for the tenant improvement capital requirements required for prospective subleases of the Property." R.A.004.

Plaza and Mr. Barron corresponded further by e-mail the following week, but Mr. Barron never provided the basic information about RSD that Plaza had requested. It was only through its own investigation and discovery in this litigation that Plaza was able to determine that RSD was not in fact a bona fide third-party assignee but rather was a new affiliate of IWA with no independent source of income or funding. R.A.168.

### B.  Procedural History

#### 1.  Mr. Barron's Deposition

In January 2023, Plaza subpoenaed Mr. Barron for a deposition. RSD moved to quash. *See* Mot. Ex. G. The district court denied the motion to quash. *See* Pet. Ex. H.

Mr. Barron was deposed on April 14, 2023. Throughout the deposition, defense counsel lodged numerous objections on privilege grounds, for example instructing Mr. Barron not to answer questions about who made the decision that

9

RSD would refuse to meet with Plaza.[3] This question plainly could have been answered without revealing any privileged communications.[4] *See* R.A.174-175.

### 2. Defendants' Motions in Limine

Defendants filed a motion in limine (the "Motion in Limine") (Pet. Ex. B) seeking an order from the district court precluding Plaza from (1) "referencing or alluding to any of Defendants' 'privileged information,'" (2) "asking questions that are reasonably expected to elicit an objection from defense counsel on the grounds of privilege or work product," and (3) making improper argument to the jury, including, for example, that Defendants are 'hiding behind the privilege.'" Pet. Ex. B at 5.

Plaza responded to the Motion in Limine, confirming that it "of course intends to comply with the Fourth Circuit's Order," and did not intend to

---

[3] Plaza did not need to rely on any of the improper instructions not to answer based on privilege or the underlying evidence that was obscured through those instructions in connection with its pending application on the crime-fraud exception or on summary judgment. The testimony in the record at the district court (and before this Court) is all non-privileged information; that is, the deposition testimony of Mr. Barron that his counsel allowed him to give, without any privilege objection or instruction not to answer.

[4] RSD argues that Plaza should have returned to court to challenge Defendants' overbroad assertion of privilege at Mr. Barron's deposition. *See* Pet. at 9-12. But Plaza is not required to move to compel Mr. Baron's testimony in response to certain questions in a deposition (during discovery) in order to ask him the same or similar questions at trial. Indeed, Plaza need not have deposed Mr. Barron at all to call him at trial. Nor did RSD move for a protective order.

introduce or argue based on any of the privileged information that was subject to the prior petitions for writ of mandamus. *See* R.A.170.

Plaza opposed the Motion in Limine, however, because it sought "to preclude Plaza from offering three large, undefined categories of evidence and argument at trial that extend far beyond the narrow selection of crime-fraud documents that was before the Fourth Circuit on mandamus review." R.A.170. In particular, Plaza opposed that aspect of the Motion in Limine that would have "require[d] Plaza to refrain from asking any questions that are 'reasonably expected to elicit a privilege objection' – a standard that [would have been] impracticable to say the least, especially given that Defendants' counsel controls what questions will elicit a privilege objection." R.A.170. In its opposition to the Motion in Limine, Plaza set forth examples of defense counsel's overbroad assertion of privilege at Mr. Barron's deposition. *See* R.A.170-181.

### 3.    The Pretrial Conference

On August 8, 2024, the district court held a pretrial conference, where it denied Defendant's Motion in Limine *without prejudice*, in large part because it was overly broad. R.A.198; *see also* R.A.199 ("the Court cannot say – and this is why an in limine motion is sort of tricky – to say you cannot ask any defense witness any question that they may have to assert privilege or they wish to assert privilege.").

11

This ruling is consistent with applicable law cited in the briefing on the Motion in Limine. *See, e.g.*, R.A.172-174.

The district court observed that "any overbroad assertions at trial are going to present an issue" (R.A.199), recognizing that the court would need to differentiate between questions that seek privileged information and those that do not, as well as "proper" and "not proper" invocations of the privilege. R.A.219. The trial judge made it abundantly clear on several occasions that he was not making any "across the board" determination (R.A.199) and would need to resolve issues relating to privilege on a question-by-question basis. *See* R.A.219-220 ("I need to hear questions and answers."); R.A.220 ("I need to hear specific questions and specific answers. It is clear there may be a repository of questions that might be put to Barron that really do invade the attorney/client privilege. I haven't heard them yet, but there may be. I have to hear them as they come."); R.A.221 ("I simply need to see the questions and answers.").

The district court was also clear that disputes about the privilege could and would be taken up outside the presence of the jury. R.A.211 ("… we'll do this at the bench."). With these parameters in mind, the district court explored some of the privilege issues that might arise, by giving his "inclinations" so that the parties could "prepare" to address these issues at trial. R.A.218; R.A.221. Over the course of an extended discussion, the trial judge raised several factors that "might" (R.A.216)

12

contribute to a finding that RSD had waived the privilege at least as to some issues, including Mr. Barron's designation as RSD's point of contact and mouthpiece (R.A.199 ("I'm not saying across-the-board, but when Barron was made the personal contact here and he basically stonewalled, you're saying you can't ask him why?")) and Mr. Barron's disclosure of communications with and information provided by RSD (R.A.220-221 ("[T]he letters that he gave and the information would pose part of the waiver. You can't be selective.")).

The district judge's overarching concern was not that Mr. Barron sent letters on behalf of his clients, but rather that Defendants "can't have it both ways. You can't say talk to him and then say well he can't talk to you." R.A.211; *see also* R.A. 199 ("I don't know whether you're saying that Mr. Barron, for example, can stand on privilege, this same privilege. And he can be your witness and say what he wants to[,] but he can't answer anything that they ask. You can use it as a sword, but you can't use it as a shield."). Ultimately, the district court indicated that there "might" be a waiver, but never ruled that had been waiver. *See* R.A.216. The conversation at the pretrial conference was meant to be illustrative, not determinative, and Defendants certainly remain free to argue that responding to a letter on behalf of a client alone cannot constitute waiver. But that argument should be made to the district court, not to an appellate court in the first instance.

The Court also made no determination whatsoever about how it would instruct the jury relative to privilege issues, only directing the parties to consider what instructions might be appropriate. *See* R.A.213-214. The judge concluded this discussion with the observation that "[the jury] won't be instructed at that point necessarily . . . . This is why I need to hear questions and answers." R.A.219-220.

As noted above, all parties to the pretrial conference understood these questions had nothing to do with the crime-fraud issue that has previously come before this Court. R.A.203 ("THE COURT: The Fourth Circuit did not talk about Mr. Barron. MS. KROPF: Your Honor, because it has never been challenged and they have never asserted crime fraud as to him. So, yes, you're correct, Your Honor . . . it has never gone up to the Fourth Circuit."). Just as Plaza will comply with this Court's orders, so too will the district court: "The Court does intend to follow the Fourth Circuit's mandamus order, and the plaintiff is warned and understands it may not inquire, directly or indirectly, the three communications at issue in the Fourth Circuit's mandamus order or the ancillary documents covered by the order." [5] R.A.198.

---

[5] Although RSD's Petition takes umbrage with Plaza's intention (should it become appropriate) to make an offer of proof on crime-fraud at trial, RSD does not actually premise its Petition on this issue or request any relief related to it. *See* Pet. at 1-2 & n.1. As Plaza made abundantly clear at the pretrial conference, if it does make any such offer of proof, Plaza would do so outside the presence of the jury, for the purposes of preserving the crime-fraud issue in the event of a post-judgment

14

### 4.     RSD's Petition for Writ of Mandamus

RSD's Petition followed. The Petition seeks wide-ranging relief, including: (1) reversal of the district court's denial without prejudice of Defendant's Motion in Limine; (2) vacatur of a purported ruling that RSD had waived its attorney-client privilege, which the district court never actually made; (3) an order precluding Plaza's counsel from asking questions at trial that are reasonably expected to elicit an objection based on privilege; (4) an order prohibiting Plaza's counsel from arguing at trial that Defendants are hiding behind the privilege; and (5) an order directing the district court not instruct the jury that it should or may draw any adverse inference from Defendants' assertion of the privilege; and (6) that the case be reassigned upon remand. *See* Pet. at 4.

## IV.     ARGUMENT

### A.     RSD has Not Established that it is Entitled to the Extraordinary Relief of Mandamus

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S.

---

appeal. R.A.225. ("THE COURT: But you would make that at the bench. MR. BOSCH: We would make it at the bench. We will not argue crime-fraud to the jury. This is for the Court to preserve that issue for appeal. . . . THE COURT: They want to make a record. They're not saying it should go to the jury.").

394, 402 (1976).[6] A party seeking mandamus must show not only a "'clear and indisputable'" right to relief but also that there is "'no other adequate means to attain [it].'" *In re Ralston Purina Co*., 726 F.2d 1002, 1004 (4th Cir. 1984) (quoting *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 35 (1980)). Even if these two requirements are satisfied, the issuing court further "must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004). Otherwise, mandamus "would undermine the settled limitations upon the power of an appellate court to review interlocutory orders." *Allied Chem*., 449 U.S. at 35 (*quoting Hon. Hubert L. Will v. U.S. Dist. Ct. for the N. Dist. of Ill.*, 389 U.S. 90, 98 n.6 (1967)).

Mandamus is not proper here, where the district court has made no ruling on the privilege questions raised by the Petition. In fact, the district court expressly reserved ruling on these questions when it denied Defendants' Motion in Limine without prejudice. The trial judge made it abundantly clear on several occasions that he would need to resolve issues relating to privilege on a question-by-question basis. *See* Section III.B.3, *supra*.

---

[6] In the three-year span from 2019-2021, this Court granted only three mandamus petitions. *See* J. Jonas Anderson, Paul R. Gugliuzza & Jason A. Rantanen, *Extraordinary Writ or Ordinary Remedy? Mandamus at the Federal Circuit*, 100 Wash. U. L. Rev. 327, 345 & Fig. 1 (2022). This is Defendants' third petition in this case alone.

"A party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). The Supreme Court has accordingly recognized "stringent" limits on the appeal of collateral orders, *id.*, and observed that "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 109 (2009).

The denial of Defendants' Motion in Limine is, at best, a question for post-judgment appeal in the normal course – and by then this Court will be able to exercise the proper role of an appellate court and review the district court's actual rulings on the issues that RSD is improperly asking this Court to resolve beforehand.

## B. The District Court Properly Denied Defendants' Motion in Limine Without Prejudice

Defendants' Motion in Limine sought to prevent Plaza from asking the broad category of any "questions that are reasonably expected to elicit an objection from defense counsel on the grounds of privilege or work product." Pet. Ex. B at 5. In keeping with Fourth Circuit precedent, the district court denied the Motion in Limine as overboard, preferring to resolve privilege issues as they arose at trial rather than in the abstract. The denial was without prejudice, leaving defense counsel free to

lodge any privilege objection they feel is appropriately asserted and to make any argument against waiver they wish. The district court's denial of the Motion in Limine was entirely appropriate.

### 1. Privilege Questions Must be Resolved Question-by-Question

Defendants failed to adequately define in their Motion in Limine what privileged information or work product they were seeking to preclude. Indeed, this Court has reversed district court orders, like the one Defendants requested, to exclude an entire category of documents without engaging in a "particularized" determination of "what evidence . . . should be admitted," holding "the *blanket exclusion* of such evidence seriously prejudiced [the defendant's] ability to present its case to the jury." *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 F. App'x 710, 715 (4th Cir. 2014) (emphasis in original).

Moreover, Defendants bear the burden of proving that the privilege applies to a particular question or piece of evidence. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). Granting Defendants' Motion in Limine would have absolved Defendants of their burden to show that the privilege applies in advance of Plaza asking even its first question at trial.

The attorney-client privilege must be "strictly construed" because it impedes the truth-seeking function of civil litigation. *See Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (citation omitted). This Court has observed that the

18

privilege "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011) (internal citations and quotation marks omitted). As such, it is more appropriate to assess questions of privilege in a particularized manner than it would have been for the district court to broadly preclude Plaza from going anywhere near it.

As with all other elements of the attorney-client privilege, the scope of what constitutes a privileged communication is a narrow one. *See In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 2011). For communications between an attorney and his or her client to be privileged, they must have been made primarily for the purpose of obtaining legal advice or services from the attorney. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

There are several lines of questioning that Plaza can pursue with Mr. Barron that do not seek privileged information. Instructions from the client that an attorney should take a particular action on the clients' behalf, for example, are not privileged because they are not communications seeking or providing legal advice. *See, e.g.*, *Diversified Dev. & Inv., Inc. v. Heil*, 889 P.2d 1212, 1218 (N.M. 1995) ("[C]ourts have held that the [attorney-client] privilege does not protect the instructions or authority given by the client to his attorney.") (alterations in original) (quoting Paul R. Rice et al., *Attorney–Client Privilege in the United States* § 6:22, at 467–68

(1993); *People v. Tucker*, 395 P.2d 449, 451 (Cal. 1964) (en banc); *Collette v. Sarrasin*, 193 P. 571, 572–73 (Cal. 1920) ("Where the communication between the client and attorney is one authorizing the attorney to perform some act on behalf of the client, the communication giving such authority is not a confidential communication by the client, and the attorney may testify to the instructions given to him."). Questions about RSD's instructions to Mr. Barron about how to interact with Plaza, for example, or the authority he was given to communicate with Plaza, would not call for privileged information.

Additionally, the attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005)(internal citations omitted). "[T]he mere relationship of attorney-client does not warrant a presumption of confidentiality." *Id.* (quoting *United States v. (Under Seal*), 748 F.2d 871, 874-75 (4th Cir. 1984)); *see E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 417 (1998) (holding that the privilege does not protect communications with an attorney conducting debt collection, a business role, for his client). "To determine whether communications were made primarily for the purpose of providing legal services, the court must consider the context in which they were made." *United States v. Cohn*, 303 F. Supp. 2d 672, 684 (D. Md. 2003).

20

Any communications between RSD and Mr. Barron would not be privileged to the extent he was acting in a business capacity. Designating Mr. Barron as RSD's front man to handle business inquires does not implicate any legal advice that RSD may have sought from Mr. Barron in his role as an attorney.

Accordingly, it was entirely proper for the district court to deny the Motion in Limine and defer ruling on privilege objections until trial. In a case that RSD itself cites, *In re Zetia (Ezetimibe) Antitrust Litigation*, the court denied a motion in limine "to the extent it seeks to preclude Purchasers from asking <u>any</u> question that results in an invocation of privilege." 2023 WL 4156858, at *5 (E.D. Va. Apr. 5, 2023) (emphasis in original). The court observed:

> There are simply too many ways that privilege could become a relevant issue at trial – or that [opposing counsel] could unintentionally ask a question that results in an invocation of privilege – for the court to deem, in advance, any question resulting in the invocation of privilege improper. This is particularly so given the many privilege assertions surrounding the crucial and highly disputed evidence of [the defendants'] views about [a] pending . . . litigation.

*Id.*

### 2. Expected Objection is not an Appropriate Standard for Limiting Plaza's Examination at Trial Given Defense Counsel's Overbroad Assertions of Privilege

Defendants have made such over-broad assertions of privilege throughout this litigation that using Defense counsel's expected objection as a metric for admissibility would prevent Plaza from asking many legitimate questions. During

21

Mr. Barron's deposition, for example, Defendants improperly asserted that all of Mr.

Barron's conversations with RSD are privileged:

> Q. . . . On August 30, 2017, as the person to whom questions were to be directed, what did you understand you were authorized to disclose?
>
> MS. KROPF: Let me just -- Mr. Bosch, I'm sorry to be frustrating here, but I need to interpose an objection. Because he's stated repeatedly that **he's the lawyer for the entity who can only be authorized by his clients.** And to the extent any authority comes from your clients, I instruct you not to answer.
>
> THE WITNESS: Okay.
>
> **MS. KROPF: Whoever the client is, that would be privileged. We'd object to it. And I instruct you not to answer.**
>
> THE WITNESS: Okay. Thank you.
>
> BY MR. BOSCH:
> Q. So were you advised by your client as to what information you could disclose?
>
> MS. KROPF: Objection. And I instruct you not to answer.
>
> THE WITNESS: Understood.
>
> BY MR. BOSCH:
> Q. So you can't say what information you were permitted to disclose or were not permitted to disclose without you divulging attorney-client communications?
>
> MS. KROPF: You can – object to form. But you can answer.
>
> THE WITNESS: I don't know how I could –
> (Reporter clarifies.)
>
> MS. KROPF: Yes. Object to form. You can answer.

THE WITNESS: I don't know to answer that question without discussing communication with my client.

**MR. BOSCH: And, Ms. Kropf, so it's clear, you're saying that all communications with his client about the information that he could or could not disclose is privileged?**

**MS. KROPF: Yes.**

R.A. 187-190 (emphasis added).

There are many more examples of defense counsel's overbroad assertion of privilege to be found in Mr. Barron's deposition. Accordingly, it would not have been proper to allow the possibility of an objection by defense counsel to dictate permissible lines of inquiry for Plaintiff.

### 3. Privilege Issues Can be Resolved Outside of the Presence of the Jury, and it is Premature to Determine How the Jury Should be Instructed

Any privilege issues that arise at trial can and should be resolved outside the presence of the jury, obviating any potential prejudice to Defendants. And to the extent Defendants *improperly* invoke the privilege, the law protecting against negative inferences drawn from the *proper* invocation of privilege does not apply. *See* 2 *Attorney-Client Privilege in the United States* § 10:8, Inferences from assertion of privilege (citing *Bayer Ag v. Housey Pharmaceuticals, Inc*., 2002 WL 31433303, *1 (D. Del. June 20, 2002)).

RSD seeks an order precluding the district court from instructing the jury based on Defendants' hypothetical invocation of the privilege at trial. But it remains

23

to be seen how privilege will be invoked at trial and how such objections will be resolved. As such, it would be premature for this Court to direct the district court how to instruct the jury.

### C.  The District Court Did Not Rule that RSD Waived Privilege by Responding to Plaza's Letters

The district court did not hold that RSD waived privilege based on Mr. Barron's simple act of sending a letter on behalf of his client. Thus, RSD's contention that finding waiver in the circumstances of this case would mean that "every time a lawyer writes a letter to opposing counsel, it would waive the lawyer's communications with her client about the letter, including the decision to include certain facts in the letter or not include them" (Pet. at 21), is a red herring. The fact that the district court did not make the ruling that RSD ascribes to it is reason enough to deny the Petition.

Moreover, even if the district court were to make a determination of waiver at trial, it would not be based on Mr. Barron's act of sending a letter alone. There are many additional grounds for finding waiver in this case, including IWA's affirmative designation of Mr. Barron as RSD's mouthpiece and Mr. Barron's selective disclosure of certain communications with RSD. The district court should have the opportunity to evaluate in the context of the evidence at trial whether Defendants are attempting to employ the privilege as both a sword and a shield. *In re Martin Marietta Corp.,* 856 F.2d 619, 623 (4th Cir. 1988) (rejecting limited waiver

24

argument where attorney revealed otherwise privileged information to government); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355–56 (4th Cir. 1984) (holding that the attorney-client privilege does not protect information communicated by the client to the attorney with the understanding or intention that the communication was to be made known to others); *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." (citing *In re Sealed Case,* 676 F.2d 793, 808-09 (D.C. Cir.1982))).

Ultimately, the privilege issues in this case are complex and nuanced enough that they must be resolved in a particularized manner, just as the trial judge has proposed to do. *See Allen v. TV One, LLC*, 2016 WL 7157420, at *3-4 (D. Md. Dec. 8, 2016) (rejecting the contention that "*any* deposition questions … concerning *any* matters arising during [a general counsel's] tenure would implicate matters protected by the attorney-client privilege.").

### D.    There Is No Basis for Reassignment

"Absent a claim of bias," which RSD does not explicitly make here,

reassignment is appropriate in unusual circumstances where both for the judge's sake and the appearance of justice an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality. In determining whether such circumstances exist, a court should consider:

25

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728–29 (4th Cir. 2021) (quoting *United States v. North Carolina*, 180 F.3d 574, 582–83 (4th Cir. 1999)).

RSD's arguments fail on all three prongs of the reassignment analysis. This case now stands ready for a jury trial, as defendants requested. RSD's third bid for reassignment is a transparent attempt to delay trial and to prejudice Plaza by raising a new privilege issue ostensibly related to this Court's prior rulings but which actually is nothing of the sort. There is nothing "unusual" at all about the way the district judge has handled moving this case towards trial.

### 1.    The District Court has Followed the Orders of this Court

Defendants' protestations notwithstanding, the district judge has followed this Court's prior orders, and there is no indication he would disregard any future order.

Following each of the previous mandamus orders, the district court promptly vacated the subject production orders. *See* R.A.001 (vacating the first production order); R.A.169 (vacating the second production order). At the pretrial conference,

26

the district court stated explicitly its intention to follow this Court's orders, and advised Plaza accordingly. *See* R.A.198.

RSD attempts to muddy the waters by framing its Petition as though it seeks mandamus relief for a third time on the same privilege question as IWA's two prior petitions, arguing that the trial judge has "shown an immutable desire . . . to eradicate Defendants'" privilege. Pet. at 27. But as explained above, this Petition deals with entirely different questions. This Court has declined requests for reassignment even in situations where the trial judge has been reversed on closely related evidentiary questions multiple times. *See, e.g.*, *United States v. Galecki*, 932 F.3d 176, 184 (4th Cir. 2019) (refusing request for reassignment, even after twice reversing the district court's decision to deny a criminal defendant compulsory process for an expert witness). And contrary to RSD's assertion, the district court has shown respect for privilege in discovery, for example by directing Plaza to depose RSD's two non-lawyer principals before Mr. Barron (*See* Pet. Ex. H) and granting IWA the opportunity to pursue mandamus relief before having to produce three documents withheld on privilege grounds that the trial court determined should be produced to Plaza. The district court will likewise respect the privilege at trial by ruling on privilege objections as they arise, and by doing so outside the presence of the jury.

## 2.     There Is No Appearance of Injustice

Just as IWA did before, RSD again skews the district court's comments at the hearing on Plaza's post-remand Motion to Unseal Crime-Fraud Information in an attempt to claim that "the court refused to agree that it could put IWA's privileged information out of its mind." Pet. at 28. This is not a fair characterization of the trial judge's comments on remand, which came in the context of discussing whether the parties could proceed with briefing summary judgment motions while IWA sought mandamus a second time.

The district court assured the parties that it would resolve this case in light of what the admissible evidence shows, rather than any predetermined assessment of the parties' claims. *See* Pet. Ex. N at 30:8-18 ("to say that somehow my thinking is already tainted, the evidence is and will be what it is, and I will make the judgment."). While Defendants have criticized the judge's response to a loaded question asked by their counsel, a fair reading of transcript makes clear the court will provide all parties with a fair trial. *See* Pet. Ex. N at 30:8-18 (promising to "give a fair trial" and to be "impartial"). There is no reason not to take the trial judge at his word. *See G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 727 (4th Cir. 2016), *vacated and remanded on other grounds,* 580 U.S. 1168 (2017) ("Although the district court did express . . . skepticism of G.G.'s claims, the record

does not clearly indicate that the district judge would refuse to consider and credit sound contrary evidence.).

To the extent that RSD claims that Plaza's intention to make an offer of proof on crime-fraud somehow shows that the district court does not accept this Court's prior rulings, that argument is baseless. As explained above, Plaza intends to make an offer of proof so that it can request that this Court reconsider this issue in the event of a post-judgment appeal. The district court was careful to ensure that any such offer would be made outside the presence of the jury, and only to make a record.

### 3.     After More Than Four Years of Fact-Intensive Litigation, the District Court is Prepared to Fairly Try This Case

Finally, reassignment would be counter-productive at this late stage in the case. The parties have engaged in four years of fact-intensive litigation, including multiple rounds of merits briefing, extensive discovery, and hours of hearings before the trial judge. Any impartial review of the complete record in this case will demonstrate that the Defendants repeatedly have flouted the district court's rulings and have baited the court through interruptions and repeated challenges. It is abundantly clear that the exit strategy they pursued has not worked, and that Defendants are relying on the Fourth Circuit to bail them out of the jury trial they demanded.

The parties and the court are ready for trial, which is scheduled to begin on August 26, 2024, in just six days' time. The parties have filed their trial designations,

exhibit lists, and made arrangements for witnesses to testify. The district court is familiar with the evidence, and no replacement could hope to become as familiar without lengthy delay. On the eve of trial, reassignment would cause an immense waste of judicial resources far out of proportion to RSD's perceptions of unfairness.

## V.     CONCLUSION

RSD's Mandamus Petition should be denied in its entirety.

Dated: August 20, 2024                 Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch
Deborah B. Baum
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
deborah.baum@pillsburylaw.com

Jeffrey P. Metzler
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212-858-1000
Facsimile: 212-858-1500
jeffrey.metzler@pillsburylaw.com

*Attorneys for Respondent Rock Spring Plaza II, LLC*

30

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____      Caption: _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[  ]   this brief or other document contains _____ [*state number of*] words

[  ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[  ]   this brief or other document has been prepared in a proportionally spaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*]; **or**

[  ]   this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s)_____

Party Name_____

Dated:_____

I certify that on August 20, 2024, a copy of the foregoing Respondent Rock Spring Plaza II, LLC's Answer in Response to Rock Springs Drive LLC's Emergency Petition for Writ of Mandamus and its accompanying Appendix Volume One were served via ECF, and a copy of the sealed Appendix Volume Two was served by email and on August 20, 2024, on the following counsel of record:

Sara Elizabeth Kropf
KROPF MOSELEY PLLC
1100 H Street NW #1220
Washington, DC 20005
sara@kmlawfirm.com
Attorney for Petitioner
Rock Springs Drive, LLC

Rebecca Allison Davis
ARNALL, GOLDEN & GREGORY LLLP
171 17th Street NW,
Suite 2100
Atlanta, GA 30363-1031
rebecca.davis@agg.com
Attorney for Investors Warranty of America, LLC

William B. Hill, Jr.
Seyfarth Shaw, LLP
1075 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309
wbhill@seyfarth.com
Attorney for Investors Warranty of America, LLC

I further certify that on August 21, 2024, a copy of the foregoing Respondent Rock Spring Plaza II, LLC's Answer in Response to Rock Springs Drive LLC's Emergency Petition for Writ of Mandamus and its accompanying Appendix Volume One and sealed Appendix Volume Two will be served by third party commercial carrier (FedEx) and scheduled for overnight delivery on the following persons at the address below:

The Honorable Peter J. Messitte
United States District Court for the District of Maryland
6500 Cherrywood Lane, Suite 475
Greenbelt, MD 20770

Dated: August 20, 2024                     Respectfully submitted,

                                           */s/ William M. Bosch*
                                           William M. Bosch
                                           PILLSBURY WINTHROP
                                           SHAW PITTMAN LLP
                                           1200 Seventeenth Street NW
                                           Washington, DC 20036
                                           Telephone: 202-663-8000
                                           Facsimile: 202-663-8007
                                           william.bosch@pillsburylaw.com

                                           *Attorney for Respondent Rock Spring
                                           Plaza II, LLC*